IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JAMIE KAUFMANN WOODS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No.: 1:03CV00105 CAS ) |
| BOB WILLS, et al. | ) ) |
| Defendants. | ) |

## DEFENDANTS' TRIAL BRIEF

As the Court recently ruled, there are two types of remaining claims being made by the plaintiffs: battery and negligent referral of medical care. Plaintiff Tracey Brazil Ozuna has a claim of battery alleged against Deborah Gerhardt and Jamie Woods has a battery claim against Betty Wills and Andrea Hill each. The Court has also permitted each of the student plaintiffs, Jamie Woods, Shari Lueken, Erika Teasley, Tracey Ozuna and Jessica Deboi to go forward on the remaining claims of negligent referral for medical treatment.

## Background

As the Court knows, Mountain Park Baptist Church ("Mountain Park") is an independent Baptist church established by defendants Pastor Bob Wills and his wife, Betty Sue Wills, in 1987. The sole ministry of Mountain Park was to serve teens through the operation of a boarding academy that provided a secure, structured Christian environment. The twin missions of Mountain Park, through the Defendants, including Brother Bob Wills, Betty Wills, Sam Gerhardt, Debbie Gerhardt, Julie Gerhardt, Sharon Goodman and Andrea Hill, were (a) to provide a secure environment to nurture Christian values of respect for authority, of Biblical self-image, of self-discipline, and (b) to foster academic development.

The Defendants' religious beliefs and practices were incorporated into the educational curriculum, policies and practices with the students.  Additionally, Defendants regularly conducted group Bible study services and we had church services several days per week.

The students at Mountain Park were enrolled by their parents.  Typically, when each student was enrolled, Pastor Wills or Pastor Gerhardt would meet personally with one or both parents to discuss the policies and procedures at Mountain Park as well as go through several forms that are filled out by the parents.  Occasionally, these initial discussions with parents would be undertaken by telephone.

Defendants maintained certain procedures and policies with respect to Mountain Park.  Among other things, there was a discipline policy in place, which included a corporal punishment provision, including swats or paddling.  All parents who enrolled their children knew about this corporal punishment policy at the time of enrollment and that their students could be subject to corporal punishment under certain circumstances.

Defendants also had an extensive policy with respect to medical care for students.  Students were afforded several opportunities per day to voice their health concerns during "medicine call."  If a concern arose during medicine call, or at any other time of day, it was discussed by some of the defendants.  Frequently, some of the defendants consulted with local physicians about students' health issues.  Students were regularly taken to the doctor to address medical concerns.  Students were also taken to other healthcare providers when necessary and when requested by a parent.

Tracey Brazil Ozuna claims that she suffered a battery when she was given swats by a staff member who is not named as a defendant.  She claims that Deborah Gerhardt instructed the staff member to administer the swats.  However, in 1996, the decision to administer swats to a

student would have been undertaken pursuant to the corporal punishment policy in place that Ms. Ozuna's parents knew about.  Ms. Ozuna would not have been enrolled at Mountain Park if her parents did not agree to the policy.  Further, as of 1996, Ms. Gerhardt would not have made the decision to administer swats to a student.

As stated above, defendants frequently communicated with local physicians regarding the various health issues of students.  Among the issues discussed were nutrition, female students missing their periods, and digestive tract issues, among others.  Additionally, when plaintiff Jamie Woods allegedly swallowed a safety pin, Betty Wills contacted Dr. Richard Gayle by telephone specifically about the issue.  He instructed her what to give Ms. Woods and indicated that, at the time, no additional medical attention was necessary.

## Discussion

### A. Battery

Ms. Ozuna asserts a single claim of common law battery against Deborah Gerhardt.  It is not alleged that Ms. Gerhardt actually committed the act, but that she instructed a nonparty to commit the act of paddling Ms. Ozuna.  Jamie Woods alleges that Betty Wills poked her and that, at one point, Andrea Hill "threw her" to the ground.

A battery is the **willful**, nonconsensual touching of the person of another.  *Phelps v. Bross*, 73 S.W.3d 651, 656-657 (Mo. App. 2002); *Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. App. E.D. 2001).  To commit an intentional tort, a person must intend the act and the resulting harm.  *State ex rel. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 112 (Mo. App. 1984).  However, consent is a defense to battery.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1109 (11th Cir. 2001); *Conte v. Girard Orthopedic Surgeons Med. Group, Inc.*, 107 Cal. App.4th 1260, 1268 (4 Dist. 2003).

In this case, Ms. Ozuna's parents consented to the corporal punishment policy when she was enrolled.  Therefore, so long as swats were given in accordance with the policy, then she cannot maintain a claim for battery.  As to Jamie Woods's battery claims, Andrea Hill denies that she ever "threw" Jamie Woods to the ground and Ms. Woods could not identify any witnesses to the alleged incident, and the alleged incident with Betty Wills does not rise to the level of battery.

### B.   Negligent Failure to Obtain Medical Treatment

The Court has found that the plaintiffs can offer evidence on whether the defendants were negligent in their duty to obtain medical treatment for the plaintiffs.  The elements of the claim, as proffered by *Stineman v. Fontbonne College*, are: (a) that the defendants must have been able to appreciate the severity of the plaintiff's injury, (b) that one or more of the defendants had the skill to provide adequate medical treatment, and (c) that providing the medical treatment would have avoided the injury's ultimate harm.  664 F.2d 1082, 1086 (8th Cir. 1981).

In this case, the evidence will be that, when the defendants could appreciate the severity of a student's condition, they either dispensed over the counter preparations, obtained advice from a doctor or took the student to the doctor.  As to the third element of the claim, defendants submit that plaintiffs have not shown what ultimate harm may have come from their complaints.  They have no medical evidence to support a claim of ultimate harm.  Therefore, Defendants question whether plaintiffs will be able to make a submissible case on this count.

          Respectfully submitted,

          BROWN & JAMES, P.C.

            /s/ John D. Briggs_____
          Steven H. Schwartz,  #4316
          John D. Briggs,  #86025
          1010 Market Street, 20th floor

4

St. Louis, Missouri  63101
314-421-3400
314-421-3128  FAX
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| Mr. Oscar Stilley | Oliver, Oliver & Waltz, P.C. |
| 7103 Racetrack Loop | 400 Broadway |
| Fort Smith, Arkansas  72916 | Cape Girardeau, MO  63702 |
| *Attorney for Plaintiffs* | *Attorneys for Co-Defendants* |

　　　/s/ John D. Briggs

7865147