IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

JAMIE KAUFMANN WOODS; SHARI LUEKEN, A MINOR,
BY AND THROUGH HER NEXT FRIENDS,
RALPH LUEKEN AND MARILYN LUEKEN; RALPH LUEKEN;
MARILYN LUEKEN; ERIKA TEASLEY, A MINOR,
BY AND THROUGH HER NEXT FRIENDS, PAUL
DOUGLAS ("DOUG") HOOVER JR., AND KATRINA L. HOOVER;
PAUL DOUGLAS ("DOUG") HOOVER JR.; KATRINA  HOOVER;
TRACEY BRAZIL OZUNA, JESSICA DEBOI        PLAINTIFFS

vs.          Case No. Case No. 1:03CV00105CAS

BOB WILLS, AKA BOBBY RAY WILLS, AKA W. B. WILLS;
BETTY SUE WILLS; SAM GERHARDT, AKA S.L. GERHARDT;
DEBORAH GERHARDT, AKA DEBBIE GERHARDT,
DBA MOUNTAIN PARK BOARDING ACADEMY;
JULIE GERHARDT; SHARON GOODMAN; and ANDREA HILL
          DEFENDANTS

**PLAINTIFFS' TRIAL BRIEF**

Come now Plaintiffs and for their trial brief state:

Certain other matters may be dealt with in a motion for reconsideration of the grant of summary judgment on most of the Plaintiffs' claims.

The Eighth Circuit, addressing the question of whether or not punitive damages are allowed in a negligence case in Missouri, said in *Ford v. GACS, Inc.*, 265 F.3d 670, 677 (8th Cir. 2001)

> "The test for punitive damages in Missouri is a strict one." Drabik, 997 F.2d at 510. Punitive damages may be awarded in a negligence case only "if the defendant knew or had reason to know a high degree of probability existed that the action would result in injury." *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155,Page 678 164 (Mo. Ct. App. 1997) (opinion adopted & reinstated after retransfer Sept. 29, 1998).

1

Also, in *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474 (8th Cir. 1993)

[20] The standard for awarding punitive damages is governed by state law. For over seventy years, Missouri law has recognized that, ordinarily, punitive damages are not recoverable in a negligence action, "because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct." *Reel v. Consolidated Inv. Co.*, 236 S.W. 43, 46 (Mo. 1921); see *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 436 (Mo. 1985). However, punitive damages may be recovered in a negligence action when the plaintiff presents evidence of sufficiently, egregious conduct:

> But an act or omission, though properly characterized as negligent, may manifest such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted. Or there may be conscious negligence tantamount to intentional wrongdoing, as where the person doing the act or failing to act must be conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. In either case punitive damages are allowable for resulting injury.

[21] *Reel*, 236 S.W. at 46 (citations omitted), cited in *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. 1973) (emphasis omitted). Conduct sufficient to support an award of punitive damages, therefore, must be "more flagrant in nature" than that sufficient to establish ordinary negligence, i.e., a breach of the duty to use reasonable care. *Stenson v. Laclede Gas Co.*, 553 S.W.2d 309, 316 (Mo.Ct.App. 1977).

[22] In Hoover, the Missouri Supreme Court set forth the preceding statement from Reel and held that punitive damages can be awarded in a negligence action on the basis of complete indifference to or conscious disregard for the safety of others, but only when the plaintiff shows that "the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury." 700 S.W.2d at 436 (emphasis supplied). Punitive damages are appropriate in such a case because engaging in negligent acts or omissions in the face of such knowledge evidences complete indifference to or conscious disregard for the rights or safety of others. *Sharp*, 495 S.W.2d at 398.

Plaintiffs submit that they will be able to fully prove the elements of a claim for punitive damages in Missouri. They will be able to show that the negligence was of a character as to

render injury highly probable.

Also, fraud may be inferred, and may relate to a representation as to a future act.  See e.g.

*Jacobs Mfg. Co.  v. Sam Brown Co.,* 19 F.3d 1259 (8th Cir. 1994)

> [13] Under Missouri law, fraud may be inferred from facts and circumstances and need not be shown by direct evidence. *Glass Design Imports, Inc. v. Import Specialties*, 867 F.2d 1139, 1142 (8th Cir. 1989); *Essex*, 661 S.W.2d at 551. Whether the facts and circumstances justify a conclusion that a defendant knows a representation is false when made is a question for the jury. *Essex*, 661 S.W.2d at 551. When a fraudulent misrepresentation claim is based on a statement of intent, the plaintiff establishes falsity by showing that when the speaker made the statement, the speaker did not intend to perform consistently with the statement. See *Craft v. Metromedia, Inc*., 766 F.2d 1205, 1218-19 (8th Cir. 1985) (applying Missouri law), cert. denied, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Although intent not to perform cannot be shown solely by the speaker's nonperformance, intent can be shown by other evidence. Id. at 1219.
>
> [14] In our view, a rational jury could find the second and third representations were false when made. This is so because, viewing the evidence in the light most favorable to Brown, the jury could reasonably infer Jacobs had decided to eliminate external distributors when it made these statements to Brown. Before 1981, Jacobs concealed distribution studies and deceived Brown about the purpose of a consultant's visit. The June 1981 Bain report recommended a carefully staged, time-phased program to eliminate Jacobs's distributors by 1984. Jacobs's later conduct and timing neatly coincided with the Bain report's recommendations. We believe the jury could reasonably infer that in June 1981 Jacobs secretly adopted the Bain report's recommendation to eliminate the traditional distributors. Thus, a reasonable jury could find the second representation - Jacobs's assurances in and after July 1981 that it had no plans to change its distribution system - was untrue when made. A reasonable jury could also find that when Jacobs made the third representation, Jacobs did not intend that Brown would benefit from increased sales after the recession's end.

In the same case, the Court said:

> [16] In a Missouri fraud case, it is for the jury to decide whether a party is entitled to rely on verbal representations that conflict with a written agreement. *Pinken v. Frank*, 704 F.2d 1019, 1024-26 (8th Cir. 1983); *Essex*, 661 S.W.2d at 550.

There may be an issue with respect to expert opinion based upon inadmissible reports.  In

*Arkwright Mutual v. Gwinner Oil co*., 125 F.3d 1176 (8th Cir. 1997) the Court said:

3

[16] Crane, a mechanical engineer, was called by the defendants to offer an opinion as to how the 15,000 gallon tank became 97% full and remained so throughout the week despite that the propane levels in the four other tanks were rising and falling uniformly. Crane's opinion was in part based upon a report by Philip Johnson prepared in connection with this accident. Johnson was an expert and consultant in the gas industry and a former employee of Crane's firm. Unfortunately, Mr. Johnson died before this case went to trial. The plaintiffs objected to any of Crane's testimony based upon his reliance on Johnson's report on grounds that it was not admissible under Fed. R. Evid. 703. **Pursuant to Rule 703, an expert may rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field.** Fed. R. Evid. 703; *South Central Petroleum, Inc. v. Long Brothers Oil Co.*, 974 F.2d 1015, 1019 (8th Cir. 1992). Specifically, the plaintiffs objected to Crane's testimony on grounds that Crane never testified that Johnson's report was of the type reasonably relied upon by experts in his field. Our review of the record, however, reveals the district court made inquiry of Crane on this point and was satisfied that Johnson's report was of the type reasonably relied upon by experts in the field and that it was reasonably relied upon by Crane in forming his opinion. Moreover, as required by Rule 703, the district court expressly limited the admission to Crane's opinion and did not admit the substance of Johnson's report. *South Central*, 974 F.2d at 1019.

[17] In any event, any error in the admission of testimony based upon Johnson's report would be harmless. Although Crane relied on Johnson's report in forming his opinion, this reliance was not exclusive. **Where an expert's opinion is partly based on hearsay which does not meet the Rule 703 requirements, his opinion is nevertheless admissible if it is supported by the other independent bases upon which he relied to form that opinion.** See, *Simmons v. Chicago and Northwestern Transportation Co.*, 993 F.3d 1326 (8th Cir. 1993) (per curiam). Here the record shows that in addition to Johnson's report, Crane relied upon his own thorough understanding of the manifold system, his extensive experience in the behavior of propane, and his extensive investigation of the physical evidence, including the storage tanks, to arrive at his conclusions. We find that the district court did not abuse its discretion, and properly admitted Mr. Crane's expert testimony.
(Emphases added)

There is likely to be admissions of the opposing parties offered into evidence. In *United States v. Smith*, 600 F.2d 149 (8th Cir. 1979) the Court said:

[13] Defendant's contention overlooks the fact that the admissibility of Smith's taped statements is not dependent upon proof of an ongoing conspiracy. Rule 801(d)(2)(A) of the Federal Rules of Evidence states that a statement is not hearsay if "[t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity . . . ." Accordingly, the statements made by Smith which are contained in the tapes are admissible against him. See *United States v. Nixon*, 418 U.S.

683, 701 & n. 13, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974) ("[T]he respondent's own out-of-court admissions would surmount all objections based on the hearsay rule . . . **and would be admissible for whatever inferences the [trier of fact] could reasonably draw** . . . ."); *United States v. Cline*, 570 F.2d 731, 735-36 (8th Cir. 1978); *United States v. Velarde*, 528 F.2d 387, 389 (9th Cir. 1975), cert. denied, 425 U.S. 914 96 S.Ct. 1513, 47 L.Ed.2d 765 (1976); 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(A)[01] (1978).[fn2]
(Emphasis added)

By:   /s/ Oscar Stilley
Oscar Stilley, Attorney at Law
7103 Racetrack Loop
Fort Smith, AR 72916
Attorney for Plaintiff
479 996-4109
479 996-3409 Fax
oscar@oscarstilley.com

**CERTIFICATE OF SERVICE**

I, Oscar Stilley, by my signature above certify that I have this November 22, 2005 served the defendants with a copy of this pleading electronically by CM/ECF to:  John Oliver, Attorney at law, Oliver, Oliver, & Waltz, PO Box 559, Cape Girardeau, MO, 63702-0559; and John Briggs, Attorney at law, Brown & James, P.C., 1010 Market Street, 20th Floor, St. Louis MO 63101-2000.