IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

JAMIE KAUFMANN WOODS et al                                                         PLAINTIFFS

vs.                        Case No. Case No. 1:03CV00105CAS

BOB WILLS et al

                                                                                  DEFENDANTS

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ENTERED ON NOVEMBER 18, 2005, PURSUANT TO FRCP RULES 52, 59, OR ANY OTHER RULE WHICH MIGHT BE APPLICABLE**

Come now Plaintiffs Jamie Kaufmann Woods; Shari Lueken, Ralph Lueken; Marilyn Lueken; Erika Teasley, with due regard to her motion to dismiss without prejudice, Katrina Hoover; Tracey Brazil Ozuna, and Jessica Deboi, and for their motion pursuant to FRCP 52, 59, or any other applicable rule, state:

The stated Plaintiffs move that the Court reconsider and deny the motion for summary judgment, with respect to the intentional infliction of emotional distress, the physical battery of Shari Lueken, the claim of battery by the administration of Thorazine, the claim for the negligent administration of Chlorpromazine, the claim for fraud, and the claim for conversion. This procedure can be used even after trial proceedings. See e.g. *Jenkins v. Arkansas Power & Light Company*, 140 F.3d 1161, 1162 (8th Cir. 1998)

> [5] Jenkins filed this suit on February 29, 1996, alleging negligence in defendant's failure to mark the submerged island and failure to warn the public about the presence of the island. Both plaintiffs and defendant filed motions for summary judgment, but the court allowed the case to go to trial. Before the court ruled on the motions for summary judgment, plaintiffs filed a motion for recusal [Page 1163] asserting that the Judge's son had become a new associate at defendant's law firm. The court denied the motion. Plaintiffs filed a renewed motion for recusal which was also denied. After the jury could not reach a verdict, the court declared a mistrial. The case was set for retrial, but

defendant filed a motion for reconsideration of its motion for summary judgment, which was granted by the court on June 30, 1997.

There is considerable overlap. However, there are certain overarching issues that may bear on more than one of the claims of the Plaintiffs. Therefore, Plaintiffs incorporate all arguments into the other arguments to the extent not improper or illogical.

Plaintiffs respectfully request oral argument. This may be had on December 12, 2005, prior to the commencement of trial.

**Burden on summary judgment.**

The initial burden for summary judgment is on the movant. As the court said in *Anderson v. Roberts*, 823 F.2d 235 (8th Cir. 1987)

> [7] In their complaint, the plaintiffs allege that their injuries were caused in part by the Pope County Deputies' use of excessive force. They further allege that Sheriff Bolin is liable for these injuries because he breached his duty to adequately supervise and instruct the conduct of his deputies. Plaintiffs' Amended Complaint ¶¶ 38, 39. To be entitled to summary judgment, Sheriff Bolin was required to show, by admissible evidence, the absence of a genuine issue of material fact. **Only after he met that initial burden did the burden shift to Anderson to come forward with controverting evidence showing that a disputed issue of fact existed for trial**. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 392 (8th Cir. 1986); *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1358-59 (8th Cir. 1984).
> (Emphasis added)

The Defendants made claims, but failed to meet their initial burden. Therefore, the burden never shifted to the Plaintiffs to put forth material facts in dispute.

Plaintiffs have for their own reasons omitted certain parties and claims in this motion for reconsideration. Plaintiffs have suffered injuries at the hands of the Defendants. They wish to obtain redress for these wrongs with the minimum expenditure of judicial resources. Plaintiffs do have a sense of fairness, and intend to obtain one full recovery for any damage or injury

incurred. If they receive what they consider a reasonably fair hearing and adjudication of the bulk of the claims they deem viable, they are unlikely to appeal the dismissal of claims on other theories. Plaintiffs have endeavored to strategically raise issues so as to vindicate their most substantial claims in one trial. There is no necessity of deciding every possible issue in this case.

This being said, we must not overlook the power of the truth. The facts of past events are immutable and unchangeable. There are many different perceptions of these facts. The presentation of evidence will vary, in different degrees, with any presentation of facts or rendition of the evidence. There are many reasons for this phenomenon. Everyone has a slightly different perspective. Few of us have the ability to ask precisely the same questions or give precisely the same answers with respect to a certain topic, over time.

This is why we have jurors, properly instructed, as the best possible means of ferreting out the truth, while rejecting error, intentional or otherwise. Each juror takes the mass of evidence, in light of their own experiences, and determine what is more probably than not the truth. A properly functioning jury system contains built in mechanisms to protect against the injection of every kind of error or bias in the finding of facts. This system, while subject to the imperfection inherent in everything fashioned and operated by human beings, is nevertheless the best system ever devised for the determination of facts in civil or criminal cases.

If a true fact is concealed from one angle, the likelihood remains that the truth will be disclosed from other available facts. In *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) the Court said:

> Indeed, the Court has recognized that cross-examination is the "`greatest legal engine ever invented for the discovery of truth.'" *California v. Green*, 399 U.S. 149, 158 (1970), quoting 5 J. Wigmore, Evidence § 1367, p. 29 (3d ed. 1940).

In reality, this is simply another way of saying that the best way to find the truth is to let both sides present the facts in the light most favorable to themselves.  Where the facts suggest a certain conclusion, it is counterproductive to declare that the logical conclusion is not among the legally acceptable conclusions.

**Intentional infliction of emotional distress.**

Defendants claimed that "there is no dispute that none of the Plaintiffs have identified a medical doctor...who will identify a medically-diagnosable injury and physical injury...resulting from emotional distress...  Since none of the Plaintiffs have the requisite medical testimony, none of them can make a submissible case and summary judgment is appropriate."  Docket # 60B, page 13."

The Court's order then states:

Defendants' motion for summary judgment on the plaintiffs' intentional infliction of emotional distress claims should therefore be granted, on the basis that plaintiffs cannot establish that the emotional distress they allegedly suffered was medically diagnosable and medically significant.

Plaintiff counsel concedes error in citing the *Blair* case as a case in which the issue of what sort of expert could provide testimony on the issue of emotional distress.  That issue is actually before the 8th Circuit under the appeal in *Stacy Kellar v. Bob Wills et al*, now pending as appeal No. 05-1151.  However, it is of no benefit to this Court to decide wrongly on an issue of law, and thus invite an appeal and retrial.

First, we must remember that the defense is not free to simply cry "King's X" and ask the Plaintiffs to prove their case beforehand.  Before the burden is shifted to the defense, the moving defendants must make a showing which, absent contrary evidence, disproves the plaintiffs' claim.  However, Defendants failed to point to any deposition testimony indicating that Dr.

Kline could not provide the necessary testimony.  Defendants offered nothing more than speculation and guesswork, which is insufficient to shift the burden of proof.

The District Court's order touches upon certain characteristics of the Plaintiffs' documents, including the brevity of certain arguments.  Certainly undersigned counsel is always interested in easing the Court's burdens, making the determination of the action less complex and difficult.  Counsel notes with pleasure that the rules have recently been amended to permit hyperlinks in the document.  Although undersigned counsel is not at the present time very experienced with this technology, he intends to learn and use this to make the courts' duties lighter and more pleasant.

Please do note that Plaintiff used the full 15 pages in his brief on summary judgment, the maximum under E.D. Mo. L.R. 7-4.01.  Recognizing the possiblity of filing a motion for over length brief, or otherwise engaging in creative ways to provide the Court with more argument, undersigned counsel would gently suggest that Court should indulge every presumption against a waiver, to avoid causing counsel to believe that extraordinary measures should be taken to ensure the protection of the rights of their clients.  This is beneficial to the bench as well as the bar.

Plaintiffs would most respectfully submit that the District Court's legal findings are in direct and irreconcilable conflict with the holdings of the Missouri Supreme Court.  *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 283 (Mo.App.1997), is a virtual dissertation on the law with respect to the issue of whether or not a psychologist is a suitable witness.  Large portions of the analysis are omitted from the quotations here, but hopefully the link above will lessen the work required to review other portions of the *Landers* opinion relevant to the question in the case at bar.  There the Court said:

The central issue in this case is whether a neuropsychologist is qualified to testify as to causation of an organic brain injury. This issue appears to be one of first impression in this state. In other jurisdictions which have considered this similar issue, the courts have split.
.....

[10] [11] Under section 490.065, expert testimony is properly admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." The essential test of expert opinion evidence is whether it will be helpful to the fact finder. *See, State ex rel. Lichtor v. Clark,* 845 S.W.2d 55, 59 (Mo.App.1992); *Stucker v. Chitwood,* 841 S.W.2d 816, 819 (Mo.App.1992). Generally, the admission or exclusion of expert opinion testimony is a matter of trial court discretion. *Wingate v. Lester E. Cox Medical Ctr.,* 853 S.W.2d 912, 918 (Mo. banc 1993). The Commission, as fact finder, has discretion to determine an expert's qualifications to testify on specific matters. *Lane v. Schreiber Foods,* 903 S.W.2d 616, 621 (Mo.App.1995).

[12] The use of the disjunctive "or" in section 490.065 recognizes that an expert witness may be qualified on foundations other than the expert's education or license. "There is no requirement that an expert witness have expertise based solely on his education. An individual with substantial practical and specialized practical experience *282 in a given area may also qualify as an expert." *Washburn v. Grundy Electric Cooperative,* 804 S.W.2d 424, 426 (Mo.App.1991). Missouri courts recognize that medical personnel, other than medical doctors, may be qualified to testify to matters "*within the limited and precise range of their medical specialties.*" *Sigrist By and Through Sigrist v. Clarke,* 935 S.W.2d 350, 357 (Mo.App.1996)(citing *Cebula v. Benoit,* 652 S.W.2d 304, 308 (Mo.App.1983) (emphasis in original)). In fact, in *Childs v. Williams,* 825 S.W.2d 4, 10 (Mo.App.1992), this court stated that "[c]onceivably a psychologist or other non-physician might attain a degree of knowledge, skill, experience, training, or education in medicine that would provide the foundation to become a medical expert." [FN3]

> FN3. *See generally, In Interest of C.L.M.,* 625 S.W.2d 613 (Mo.1981). Psychologist testified that patient's mental defects were "inorganic" or mental in nature rather than "organic" or physical in derivation. A psychiatrist, however, had determined that the patient's mental defects were organic in nature or caused by brain damage related to the patient's epilepsy. **On appeal, the Missouri Supreme Court held that the opinion of a psychiatrist did not necessarily outweigh the psychologist's opinion**.

The record supports the Commission's determination that Dr. Wetzel was qualified to testify as an expert as to the causation of claimant's injuries. Dr. Wetzel practices neuropsychology and is a full professor in neurology and in neurological surgery at Washington University School of Medicine. Dr. Wetzel has been published in medical journals and is a Fellow of the American Psychopathological Association. He teaches neurologists, neurosurgeons, and psychiatrists in the area of his expertise.  Dr. Wetzel explained that clinical neuropsychology is the assessment, testing, and evaluation of

> people with disorders that may be psychiatric or related to a dysfunction in the brain. When it comes to assessing the cause and existence of brain damage, neurologists and neurosurgeons at Washington University School of Medicine come to Dr. Wetzel for both advice and training. Further, neurosurgeons rely on Dr. Wetzel to identify the area of the brain where surgery should be performed. **One would be hard-pressed to conclude that Dr. Wetzel lacks the medical knowledge, skill, experience, or training simply because he is a psychologist and not a doctor of medicine.**
> (Italics in original, remaining emphases added)

The Defendants, rather than attempting to shoulder their burden of demonstrating a prima facie case that the Plaintiffs' expert was unqualified, simply made the bare allegation that the Plaintiffs' expert Dr. Kline was a psychologist rather than a medical doctor. Docket # 60, Ex. 2, page 7, ¶¶ 55-57. This claim, although true, is altogether insufficient to shift the burden of rebuttal to the Plaintiffs.

**The claim for false imprisonment, battery by chlorpromazine, the negligent administration of Chlorpromazine, and the parents' claim for fraud.**

These four claims intertwine to a great extent, and thus are addressed together. The District Court found that subsequent to the striking of Ben Corpus' report and testimony, there was no proof of drugging. The District Court has overlooked several key facts that mandate a trial on these issues.

Once again, the Defendants, rather than providing proof admissible under Rule 56, and then giving Plaintiffs the opportunity to rebut, resort to the theme of "they can't prove it." Betty Wills and Sam Gerhardt both made declarations, but neither stated that they 1) Did not know that the students at Mountain Park Boarding Academy were being drugged, nor 2) That they themselves had not been involved in drugging the students. The implication is that these two individuals wish to make statements, wish to infer certain things, but fear the consequences of a clearly false statement under oath.

For an example of a litigant who properly followed the rules, made a prima facie case, and shifted the burden to the plaintiff, see *Cochran v. U.S.* 982 F.2d 525, (C.A.8, Mo. 1993), where the Court said:

> We conclude the District Court properly granted summary judgment on Cochran's FTCA claim that Darling negligently gave him Thorazine in 1987. **The medical records produced by the United States are comprehensive and they clearly show that Thorazine was not administered to Cochran.** In addition, Cochran does not contend that the United States is withholding information with regard to his medical treatment in 1987. Therefore, there is no disputed issue of material fact.
> (Emphases added)

Defendants claim to have records of administration of drugs but did not produce them. Defendants suspiciously fail to expressly deny the administration of Thorazine.

Sam Gerhardt does say in his declaration at Docket #60, Exhibit B, page 3, that "During my meetings and interviews with parents, I told the truth about the policies and practices at and of Mountain Park."  The District Court, however, says at page 7 of its order, ¶ 16, that "Sam Gerhardt **always** told the truth about the policies and practices at Mountain Park when he met with parents." (Emphasis added)

That's not what Sam Gerhardt said.  He said that he told the truth, but did not say that he told the whole truth, or nothing but the truth, or alway told the truth.   Granted, Sam Gerhardt probably did tell some truth at these meetings, thus making his statement technically true.   But on the central issue of the case, the silence is deafening.

The District Court analyzed the battery claim, with respect to chlorpromazine, found that res ipsa loquitur was inapplicable, and moved to the next matter.  Later in the order, when negligence was under consideration, the District Court did not consider res ipsa loquitur. Plaintiffs respectfully request reconsideration with due consideration res ipsa loquitur.  In

*Wagstaff v. City of Maplewood,* 615 S.W.2d 608 (Mo.App. E.D. 1981) the Court said:

> FN1. In the argument portion of its third point the City states that the res ipsa submission was also erroneous because the evidence "did not create an inference of negligence, but instead, it showed the actions of Officer Pool were intentional." The City does not elaborate on this statement nor offer authority for this position. **In any event, it is without merit. A party seeking the benefit of res ipsa loquitur presumption need not exclude all other possible inferences from the evidence. The evidence must be sufficient to raise a reasonable inference of defendant's negligence.**
> (Emphasis added)

The case cited by the Court, *Rea v. St. Louis-San Francisco Ry. Co.* 411 S.W.2d 96, 99 (Mo. 1967), does not allow a plaintiff to be whipsawed out of any claim at all.  The Court said:

> [1] [2] In *Williams v. St. Louis Public Service Co.*, 363 Mo. 625, 253 S.W.2d 97, 102(2), the court en banc said: 'Submission under the res ipsa loquitur doctrine may not be denied, unless specific negligence, the real or precise cause is definitely shown by direct evidence.' However, where specific negligence, the real or precise cause, is shown definitely by direct evidence there is no room for the presumption or inference which the res ipsa rule affords. The plaintiff is bound by his evidence in a res ipsa case just as he is in an ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how this collision occurred but you are, nevertheless, still at liberty to speculate <u>and presume that it may have happened some other way.</u>'
>
> [3] Reference to the testimony of plaintiff's witness, brakeman Owings, leads to the inescapable conclusion that plaintiff showed specific acts of negligence, **<u>the real or precise cause of the collision of the two trains</u>**. For this reason, plaintiff could not rely on and was precluded from submitting under the res ipsa loquitur doctrine.
>
> Citing *Conduitt v. Trenton Gas & Electric Co.*, 326 Mo. 133, 31 S.W.2d 21, and *Weigand v. Pennsylvania R.R. Co.*, 3 Cir., 267 F.2d 281, plaintiff says even though he introduced evidence tending to show the cause of the accident, he did not lose the benefit of the res ipsa doctrine, because, by his evidence, the cause is left in doubt and is not clearly shown. The cause of this collision is not left in doubt; it is clearly shown by plaintiff; the cases are not applicable.
> (Emphases added)

The rule of *Rea* is a fairness rule.  If you definitely prove the cause, you can't let the jury speculate on some other cause.  How then does that prevent the Plaintiff from using res ipsa loquitur as an alternate method of proving the *same* tortious conduct?  It cannot.   And if the

Court found that Plaintiffs proved "exactly" how the wrongful act occurred, why are the Plaintiffs deprived of any claims or any remedy whatever related to the administration of chlorpromazine?

This Court on October 27, 2005, excluded the testimony of Benjamin Corpus on the ground that he was not a medical doctor.

> Finally, Mr. Corpus may not testify about the results of blood tests on plaintiff Teasley which were taken and tested by another laboratory, or attempt to correlate plaintiffs' physical symptoms with their alleged ingestion of prescription medications, because he is not a toxicologist or physician and lacks the necessary medical training to offer such testimony. *Cf. Jones*, 188 F.3d at 723-24.

Plaintiff has submitted herewith the expert testimony of Dr. Kline. Defendants have objected to the report, but only on grounds of relevancy. This challenge is not a meritorious or even a particularly strong objection. The District Court allowed Dr. Kline to testify in the Kellar case to evidence similar to that prepared for Ms. Lueken and Ms. Teasley in this case. See Exhibit 2 filed contemporaneously herewith.

Furthermore, Dr. Kline stated at page 9 of his report on Erika Teasley, Exhibit 3:

> A review of records from Laboratory Corporation of America indicated that Ms. Teasley was tested for the presence of several drugs three days after her discharge from MPBA. The tests showed that she tested positive for the presence of Chlorpromazine, commonly known as Thorazine (an antipsychotic). Thorazine is an antipsychotic, which requires a prescription in order to administer. There are no records indicating that she had been administered that medication by anyone before, during, or after her stay at MPBA. Blood levels at the time of her testing were well within the therapeutic range. They denied that she was seeing any doctors during her stay at MPBA.

At page 12 and 13 he said that:

> The administration of Chlorpromazine to Ms. Teasley during the time she was a resident of Mountain Park Boarding Academy is at the least negligent behavior. Based on the information provided by Ms. Teasley and her mother the likely source of the medication were the "pills" she was given while at MPBA.

10

This is relevant and admissible evidence. *Arkwright Mutual v. Gwinner Oil* Co., 125 F.3d 1176 (8th Cir. 1997) the Court said:

> ... Johnson was an expert and consultant in the gas industry and a former employee of Crane's firm. Unfortunately, Mr. Johnson died before this case went to trial. The plaintiffs objected to any of Crane's testimony based upon his reliance on Johnson's report on grounds that it was not admissible under Fed. R. Evid. 703. Pursuant to Rule 703, an expert may rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field. Fed. R. Evid. 703; *South Central Petroleum, Inc. v. Long Brothers Oil Co.*, 974 F.2d 1015, 1019 (8th Cir. 1992).

Furthermore, at page 7 of Exhibit 4, Dr. Kline said:

> Toxicology reports from Toxicology Associates, Incorporated indicated that samples of Ms. Lueken's hair were taken while she was at Cross Creek Manor. The samples were taken in September of 2003 and consisted of hair that was approximately 27 cm in length, representing 27 months dating back to June of 2001. The last 3 centimeters (farthest from the scalp) of her hair was tested. According to Ben Corpus of Toxicology Associates, the portion of the sample analyzed corresponded to June, July, and August of 2001. The samples of her hair tested positive for Carbamazepine (Tegretol, an anti-seizure and mood stabilizer) and Chlorpromazine (Thorazine, an antipsychotic). Ms. Lueken denied being prescribed either medicine by any physician. Marilyn Lueken also indicated that she gave no one permission to give either medicine to Ms. Lueken.

Once the showing has been made that the information is such that experts in the field reasonably rely upon a given type of evidence, the burden falls squarely on the shoulders of opposing counsel to oppose the evidence by cross examination. *Brennan v. Reinhart Institutional Foods*, 211 F.3d 449, 451 (8th Cir. 2000).

The District Court suggests that *Blair v. Wills* 420 F.3d 823 (C.A.8 (Mo.),2005) supports the a dismissal. However, that opinion relied upon the parents consent with full knowledge of the facts. At the time that case was developed, adequate proof of the drugging was not available.

The District Court opinion, at 39, says:

Based on the holding in Blair, the Court concludes that defendants are entitled to

summary judgment on the false imprisonment claims of plaintiffs Woods, Ozuna and Deboi because it is undisputed that these plaintiffs were minors while enrolled at Mountain Park and their parents consented to their enrollment.

How did we get to the point that the Defendants have no burden of making a prima facie case that the consent was lawful and based on at least substantially truthful information?  The premise of *Blair* is being extended by a giant step, at least.

The District Court recognizes that "... the issue whether fraud can vitiate the consent to enrollment is squarely before the Court."   However, the District Court fails to consider the reasonable implication, that being that if all the girls are having similar symptoms, of missed periods, feelings of being drugged, drowsiness, inability to concentrate, etc, the reasonable inference is that the fraud was practiced upon all the parents, not the parents of the two children vigilant enough to obtain blood or hair tests.

Plaintiffs are certainly willing to cite authority that fraud vitiates consent.  See e.g. *Trammell v. Vaughan*  59 S.W. 79, 82 (Mo. 1900) "If the defendant fraudulently entered into the contract, the plaintiff was entitled to withdraw from the contract, for the defendant's fraud vitiated her consent."  For the same proposition see also *Adams v. Griffith*  51 F.Supp. 549, 550 (D.C. MO. 1943) and *Conerly v. Flower*  410 F.2d 941, *944 (C.A.Ark. 1969).   In *In Interest of D.C.C.*  971 S.W.2d 843, *846 -847 (Mo.App. W.D.,1998) the Court said: "If proven, fraud and misrepresentation are proper bases for setting aside a judgment."   In *Di Franco v. Steinbaum* 177 S.W.2d 697, *702 (Mo.App. 1944) the Court said: "Where the consent of a party to the novation is procured by fraud, the agreement will be invalid and novation will not result."

It would indeed be an extravagant contention, that a consent obtained from a parent by fraud would nonetheless be valid and enforceable, not only against the signing parent but also

against the abused infant.  As the Court said in *Payne v. King*, 38 Mo. 502 (Mo. 1866). "Infants are the peculiar favorites of the law and of the courts, and their interest will always be protected."

The Defendants have responded in a manner consistent with guilt.  The District Court was forced to discount such silly claims as the one made at page 17 of their brief, Docket # 60, where the Defendants say: "Therefore, to make a submissible case for battery, each Plaintiff must demonstrate that, for example, Mrs. Wills actually handed her an antipsychotic drug, in pill form, on a particular day, and instructed her to swallow it."  Such claims are totally inconsistent with orderly society.

Nevertheless, the Plaintiffs are confronted with rulings based on new theories not presented by the Defendants.

> As stated above, because the Parent plaintiffs' assertions that their daughters' various symptoms were caused by the illicit administration of chlorpromazine or other drugs are not a matter within the common knowledge or experience of lay persons, expert opinion is essential to show that the claimed injuries were caused by the administration of psychotropic medications. See *Portis*, 38 S.W.3d at 441. Plaintiffs lack this necessary evidence, and therefore summary judgment is proper on this aspect of the Parent plaintiffs' fraud claims.

This is legally wrong.  Once fraud is proven, it is not necessary to prove the damages by an expert.  Nowhere is there any or authority stating that fraud, by a battery constituting a crime, no less, nevertheless vitiates a contract only upon proof of specific damages given by an expert.

It was indeed disheartening to read the opinion which excluded the testimony of Ben Corpus.  However, an admission of a party may form the basis for summary judgment.  *Karras v. Karras*, 16 F.3d 245 (8th Cir. 1994), citing *Luick v. Graybar Elec. Co.*, 473 F.2d 1360, 1362 (8th Cir. 1973) (summary judgment may be based on admitted matter).[fn2].

While talking to Defendant Andrea Hill on the phone, Kenda Landsverk, a former

student at Mountain Park Boarding Academy, stated that she done a test on her tissues for the presence of Thorazine, and the results were positive. In response, Andrea Hill admitted that she knew the students were being drugged. Ms. Landsverk, who is subpoenaed and expected to testify at trial, made her declaration that these facts are true. See Exhibit 5 to motion. This declaration serves to take the place of the recently rejected testimony of Ben Corpus.

The best course of action is to allow these Plaintiffs' claims to proceed under the logically available theories. The truth is simply too powerful. Additional, overwhelming evidence of the drugging continues to mount. Granting the Plaintiffs relief will serve the public interest, not only by holding abusers of children to account for the injuries caused thereby, thus discouraging other like minded persons, but also enhances and protects the good public standing and reputation of the judicial branch.

**The claim of physical battery against Shari Lueken.**

Once again, the Defendants curiously fail to deny what any innocent person would naturally and probably deny. What are the odds that neither Betty Wills nor Sam Gerhardt would think that they might need to deny having ordered these atrocious acts against Shari Lueken? They submit testimony to show none of the Defendants personally battered her. But the page cited, Exhibit Docket #60, Exhibit I, page 35, says that staff member Erin Shanahan did in fact commit battery. At no time do Betty Wills or Sam Gerhardt make any effort to deny that they actually ordered staffers or orientation guides or other students to batter Shari Lueken.

Without such evidence, the Defendants did not shift the burden. Rather, they can be fairly said to have tacitly admitted their own guilt.

**Conversion**

Once again, the Defendants curiously fail to deny having stolen the piccolo. Of course, it would be highly suspicious if one denied the charge and the other didn't. The natural and probable reaction of any innocent party charged with theft, or conversion, would be to allege that they were not the thief. The natural course is not pursued in this case. The Defendants' own handbook states that they open all mail. See Exhibit 1 attached to the motion filed contemporaneously herewith.

Exhibit Docket #60, Statement of Material Facts, page 6, details the Defendants' claim. They say that the Plaintiff Lueken "has no facts showing that one or more of the Defendants actually took possession of the piccolo." The Defendants by this naked estimation of the Plaintiffs' case has failed to put on sufficient evidence to shift the burden, on summary judgment.

In *Ware v. McDaniel* 899 S.W.2d 170, 173 (Mo.App. W.D. 1995), the Court said, after defining the tort of conversion:

> [6] [7] Essential facts may be proved by circumstantial evidence so long as the desired inference is established with such certainty to cause it to be the more reasonable and probable of conclusions to be drawn. *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 680 (Mo.App.1985). Furthermore, proof by circumstantial evidence must rise above the stature of guesswork, speculation or surmise. Id.

WHEREFORE, Plaintiffs pray that the Court reconsider and reinstate the claims of the stated Plaintiffs with respect to the motion for summary judgment, with respect to the intentional infliction of emotional distress, the other batteries including battery by the administration of Thorazine, the claim for the negligent administration of Chlorpromazine, the claim for fraud, and the claim for conversion; and further pray all other and further relief as may be appropriate whether or not specifically prayed.

>By:   /s/ Oscar Stilley
>Oscar Stilley, Attorney at Law
>7103 Racetrack Loop
>Fort Smith, AR 72916
>Attorney for Plaintiff
>479 996-4109
>479 996-3409 Fax
>oscar@oscarstilley.com

**CERTIFICATE OF SERVICE**

    I, Oscar Stilley, by my signature above certify that I have this December 5, 2005 served the defendants with a copy of this pleading electronically by CM/ECF to:  John Oliver, Attorney at law, Oliver, Oliver, & Waltz, PO Box 559, Cape Girardeau, MO, 63702-0559; and John Briggs, Attorney at law, Brown & James, P.C., 1010 Market Street, 20th Floor, St. Louis MO 63101-2000.