IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

JAMIE KAUFMANN WOODS; SHARI LUEKEN, A MINOR,
BY AND THROUGH HER NEXT FRIENDS,
RALPH LUEKEN AND MARILYN LUEKEN; RALPH LUEKEN;
MARILYN LUEKEN; ERIKA TEASLEY, A MINOR,
BY AND THROUGH HER NEXT FRIENDS, PAUL
DOUGLAS ("DOUG") HOOVER JR., AND KATRINA L. HOOVER;
PAUL DOUGLAS ("DOUG") HOOVER JR.; KATRINA  HOOVER;
TRACEY BRAZIL OZUNA, JESSICA DEBOI            PLAINTIFFS

vs.             Case No. Case No. 1:03CV00105CAS

BOB WILLS, AKA BOBBY RAY WILLS, AKA W. B. WILLS;
BETTY SUE WILLS; SAM GERHARDT, AKA S.L. GERHARDT;
DEBORAH GERHARDT, AKA DEBBIE GERHARDT,
DBA MOUNTAIN PARK BOARDING ACADEMY;
JULIE GERHARDT; SHARON GOODMAN; and ANDREA HILL
              DEFENDANTS

**PLAINTIFFS' RESPONSE TO MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF ISSUES THAT HAVE BEEN DECIDED OR EXCLUDED
FROM THE CASE** [Docket # 95]

Come now the Plaintiffs and for their response to the Defendants' motion in limine to exclude evidence of issues that have been decided or excluded from the case, and state:

1. Paragraph 1 is admitted.

2. Paragraph 2 is an apparently deliberate attempt to portray the Court's order as doing something that it clearly did not do. The Court in its recent order on motion for summary judgment, [Docket 83], said at page 2 that claims of negligence *and* negligence in providing medical treatment had been alleged. (Emphasis added)  At page 69 the Court denied: "(3) all plaintiffs' remaining negligence claims against all the defendants, except for Ozuna and Deboi's

1

claims to the extent they are asserted against defendant Goodman."

3.     Plaintiffs deny paragraph 2.  The issues are not so simple as the Defendants claim. Consent must be fully and fairly and accurately informed.  However, Defendants have noted some of the issues.

4.     Plaintiffs deny paragraph 3.  Defendants continue to try to pretend that there is no negligence except as to medical or health complaints.

5.     Plaintiffs deny Paragraph 5.

    A.     Issues concerning drugging cannot be divorced from the expertise required of a doctor treating a person who has missed periods or otherwise exhibited signs of drugging.  The Defendants are free to present testimony that excludes drugging as a possible cause.  However, the Defendants are not free to deny the drugging, despite the fact of three positive drug tests in this case and another witness whose body tissues tested positive for chlorpromazine, and at the same time feign ignorance of why the Plaintiffs missed their periods.  Plaintiffs hope to present multiple experts and exclude any questions about whether or not drugs may have caused certain symptoms, despite the fact that each and every expert offered or previously offered by the defense at least mentioned the possibility of drugging, with the possiblity of testimony being given on the subject.

    B.     Mountain Park Boarding Academy is a lockdown facility and this evidence is clearly relevant to show that the Plaintiffs could not acquire goods and services for themselves, medical or otherwise, without the express consent of the Defendants.  This request is totally unreasonable and unsupportable.

C. The identity of the persons responsible for the various injuries of the Plaintiffs is highly relevant. The Defendants offer exhibits purporting to give power or authority to Mountain Park Boarding Academy, yet ask the Court to prevent the Plaintiffs from inquiring concerning who Mountain Park Boarding Academy actually is. The Defendants' exhibits reference "the acceptance of this application by Mountain Park Baptist Boarding Academy" (Exhibit A); "any other official of Mountain Park Boarding Academy" (Exhibit B); "Bob Wills, S.L. Gerhardt, or any other officer of Mountain Park Boarding Academy" (Exhibit X). These are only a limited sample of such references.

References to Palm Lane are important, proper, and relevant to show that the Defendants ceased the operations of both schools at about the same time, operated both schools similarly, had the same exhibition of physical ailments as Mountain Park Boarding Academy, and had the same management and style of operation.

D. Defendants did engage in brainwashing. Their tactics closely match the textbook pattern of practice for use in brainwashing.

E. Plaintiffs intend to present proof of the actual occurences at Mountain Park Boarding Academy, and let the jury decide if the punishment was "cruel and unusual." Defendant Debbie Gerhardt claimed that Mountain Park Boarding Academy did not engage in punishment of the students.

F. The cruelty and abuse inflicted upon other students in the presence of, or by, the Plaintiffs, have all worked together to inflict severe injury on the Plaintiffs. These events are relevant and material to the case.

G.     Defendants used these tactics, and should not be allowed to hide either the use of such tactics, or telling the students of such tactics in order to terrify them and for other purposes.

H.     Defendants claim not to believe in lawsuits. However, Bob Wills sued for $44 million due to events that led up to his departure from Mississippi. The background of the Defendants with respect to their practices and experiences, whether or not at other boarding schools, are important and necessary for the jury to determine whether the Defendants failed to exercise the necessary and proper care under the circumstances relevant to this case. Furthermore, Plaintiffs have a right to prove that the Defendants have bragged about their decades of experience in dealing with teens, and presented these facts to the parent Plaintiffs without telling them that they had suffered a consent judgment, whereupon they promptly departed the state to open a new boarding school. Plaintiffs' bragging must be tempered with the facts that were not disclosed. The operation of another school in which missed periods were so pervasive as to precipitate a court order requiring the Defendants to disclose the fact to parents, and the almost immediate circumvention of that order, is of paramount importance to show that 1) Courts, parents, and child welfare agencies care about the cessation of menses, and consider such to be an important fact, 2) The Defendants well knew these facts, 3) The Defendants' modus operandi has caused consistent cessation of menses for a period of more than 2 decades, spanning most if not all facilities operated by the Defendants, 4) The Defendants took affirmative steps to prevent parents from

obtaining information that their daughters' menses regularly ceased when girls came to be in the custody of the Defendants, and 5) The consistency of the Defendants' mockery of students whose menses ceased, and the failure to provide care despite the fact that such an occurrence is a serious warning of potentially devastating medical conditions.

The Defendants have made representations to each of the parents in this case, which includes the following statement, which is by way of example included as part of Exhibit Y pages 5 and 7:

ENROLLMENT ORIENTATION AGREEMENT

We (I), _____, have enrolled our (my) child, _____, into Mountain Park Baptist Boarding Academy (MPBBA) on _____, 20____. **During the enrollment orientation the 12 items on the attached sheet were discussed in detail to our (my) satisfaction.** We (I) have signified by initial each of the 12 items discussed.

....

6. In order to be effective we must have 100% support of both parents in all areas. **We <u>encourage</u> parents to take advantage of the depth of experience that over twenty-five years has given.** A parent should closely follow all policies discussed during the enrollment orientation interview. A parent should not become offended whenever something is returned to them as inappropriate. A parent should not be negative at any time a change in policy is deemed necessary by MPBBA. If at anytime a parent becomes unwilling to give full support to all MPBBA policies, the parent should voluntarily remove the child from the academy.
(Emphases added)

This demonstrates the Defendants' eagerness to trumpet their 25 years of experience, yet their unwillingness to allow either the Plaintiffs or parents in general or the jury to have any information concerning the true facts of their

history. Plaintiff can of course show the actual document at pretrial. These facts, and others like them, demonstrate many different facts relevant to the case. The Defendants complain simply because the facts demonstrate a wilful indifference and studied neglect of the needs of those in their custody, at the very best. In reality, these and other facts demonstrate that the Defendants engaged in fraud to increase their profits at the expense of their customers.

I. These facts are essential to show deprivation of sleep, which may constitute negligence with respect to a female so severely stressed or otherwise maltreated that her menses ceases.

J. The Defendants' property holdings is relevant to punitive damages, which are proper in a negligence case such as this, under Missouri law. The authority is shown in the jury instructions submitted by Plaintiffs.

K. One of their own exhibits, Exhibit "A" third page, has a report from a bounty hunter who seized Tracy Brazil from her bed at 3:45 AM. Yet the Defendants have the chutzpah to ask this Court to prevent the Plaintiffs from introducing any such evidence. Presumably the Defendants hope that the Plaintiffs will be prohibited from explaining the true facts with respect to Mountain Park Boarding Academy's use of bounty hunters and "escorts" as they are euphemistically called. There is no merit whatsoever to this request.

L. These are the facts. The Defendants have no right to complain about a factually accurate description of the facilities. The locking of fire exits, and other safety

violations, would necessarily and probably cause emotional pain and suffering.

M. With constipation and missed menstrual periods as central issues, what could be more relevant than toileting privileges!? The Defendants seem to think that the most horrific deprivation of rights to take normal care of private bodily functions is irrelevant. The Defendants' whole motion is little more than an attempt to smoke out the Plaintiffs' knowledge, so as to admit those facts known by Plaintiffs and deny all others. This should meet with severe rebuke from the Court.

N. Stress is the excuse for cessation of menses. Overwork and sleep deprivation are key facts to demonstrate the Defendants' negligence. Defendants are tossing out one liners to impose a huge workload on Plaintiff counsel, thus limiting his ability to prepare for trial.

O. The facts are relevant. Plaintiffs have no intention to argue that the ADA was violated.

P. This claim is frivoulous and should subject the signer to sanctions. The Court has clearly ruled that such mental and emotional distress is relevant. The Court's opinion [Docket 83] at page 56 says:

"The third element of Kersey addresses whether providing medical attention would have
avoided the injury's ultimate harm." *Stineman*, 664 F.2d at 1086. This is where plaintiffs' claims are weakest. Plaintiffs do not present any evidence of permanent injuries, and defendants have offered the testimony of their expert witness, Dr. Asher, who opined that none of the plaintiffs have a medically significant condition resulting from their enrollments at Mountain Park. Plaintiffs allege, however, that they suffered pain as a result of defendants' inaction. **Plaintiffs may testify concerning their past pain and suffering, and defendants have not established that plaintiffs cannot pursue their negligence claims in the**

**absence of permanent injury**.
(Emphasis added)

Q. Plaintiff Shari Lueken's deteriorating eyesight is a legitimate matter for proof at trial. She has personal knowledge of the deterioration, and can testify as to the circumstances of the vision loss. The comment of the doctor simply provides context for the securing of vision care services, and should not be prohibited.

R. Unexplained burns or marks on Teasley's arm are properly admissible under the doctrine of res ipsa loquitur. Such burns or other marks do not ordinarily appear on a teen girl's arm in the absence of negligence.

S. Defendants own Exhibit "A" page 3 discloses the use of security services, bounty hunters, or escort services as clearly as such fact could possibly be disclosed. Plaintiffs notified the Defendants that such documents might be admitted regardless of later misgivings of the Defendants. Therefore, the Defendants have no legitimate complaint of their practices being found out.

T. Defendants created the system of "orientation guides" that ultimately contributed to Will Futrelle's untimely death. This is proven by the Mountain Park Handbook which at page 32 brags to parents:

> Status of Orientation
>
> The concept of an orientation status within boarding academy ministries originated with MPBBA and has proven uniquely effective in developing the Christian character of teenagers. Other ministries, having seen the tremendous success of orientation, have adopted the concept with their own programs.

    Jessica Brazil was taken off the property of Mountain Park Boarding Academy and driven various places lest she speak to investigators. This shows a guilty mind, and furthermore would necessarily and probably cause great emotional harm to Jessica and the other students, knowing that the Defendants' orientation guide system was at least partially responsible for a student death. Furthermore, Defendants actions in trying to keep Jessica Brazil away from investigators would necessarily and probably cause the students serious mental and emotional harm, by indicating a willingness to sacrifice the students' need for mourning and closure for the Defendants' illegitimate interest in suppressing the truth concerning the death and concerning the treatment of students at the school. Denying any human being the opportunity to grieve for the death of a friend is a serious affront to human dignity, and virtually certain to inflict serious and unnecessary emotional pain and suffering.

U. Defendants forget that Jessica Brazil (now Deboi) was extremely dehydrated after Mountain Park Boarding Academy, and the dehydration nearly cost Jessica her life by making it nearly impossible to get a needle into one of her veins. Furthermore, res ipsa loquitur is appropriate here. In the absence of negligence, a teen rarely becomes so dehydrated that she will lose consciousness and collapse upon taking an over the counter cold medication. The Defendants have their own medical doctor experts that they can use to provide evidence that the medical condition resulted in spite of the Defendants' exercise of ordinary care in providing services to Jessica. It is critical that the Court keep in mind that

        virtually every detail of Jessica Deboi's life was monitored and tightly controlled by the Defendants.  They have no excuse for sending a student away from their facility in an extremely fragile and potentially life threatening condition.

6.       The Defendants are setting a trap.  They hope to obtain extreme limitations from the Court.  Then Defense counsel will ask questions calculated to elicit prohibited answers, and thereupon ask for a mistrial.

        Plaintiffs can establish a suitable foundation for their lines of questioning.  The Defendants will not be unfairly prejudiced by any of the foregoing facts.  The facts concerning Defendants' treatment of minors in their custody and control are immutable historical fact.  The production of factual information concerning Defendants' operations simply improves the jury's ability to sort truth from fiction and ascertain what actually took place.  The jury is capable of determining the weight of testimony and evidence provided to them for their consideration, provided that the testimony is relevant.  Evidence is relevant if it helps to show, however slightly, that a material fact is more probably true than would be the case without the evidence.

7.       The order sought in paragraph 7 should be denied.  Evidence concerning the facts stated should be evaluated as presented, with any objections ruled upon during the presentation of evidence.

WHEREFORE, Plaintiffs pray that the motion be denied in its entirety, and for all other and further relief as may be appropriate whether or not specifically prayed.

        By:   /s/ Oscar Stilley  
        Oscar Stilley, Attorney at Law  
        7103 Racetrack Loop  
        Fort Smith, AR 72916

>Attorney for Plaintiff
>479 996-4109
>479 996-3409 Fax
>oscar@oscarstilley.com

## CERTIFICATE OF SERVICE

    I, Oscar Stilley, by my signature above certify that I have this December 9, 2005 served the defendants with a copy of this pleading electronically by CM/ECF to:  John Oliver, Attorney at law, Oliver, Oliver, & Waltz, PO Box 559, Cape Girardeau, MO, 63702-0559; and John Briggs, Attorney at law, Brown & James, P.C., 1010 Market Street, 20th Floor, St. Louis MO 63101-2000.